FILED

DEC 2 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEREMY L. DODDS,

               Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

Civil No. 09-332-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

### Findings and Recommendation

Jeremy L. Dodds ("Dodds") challenges the Commissioner's decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 402 U.S.C. §§ 401-33, 1381-83f. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision should be affirmed.

Page 1 - FINDINGS AND RECOMMENDATION                [LB]

*Procedural Background*

Dodds filed his application for DIB on December 13, 2004,[1] alleging disability since September 7, 2000, due to a combination of impairments, including, but not limited to, concussion mood swings, inability to converse, sharp pains in his head and neck, lightheadedness, and awkward balance. Dodds's application was denied initially and upon reconsideration. On August 21, 2008, after a timely request for a hearing, Dodds appeared and testified before an administrative law judge ("ALJ"). Dodds was represented by counsel, Rory Linerud. C. Kay Wise, an impartial vocational expert ("VE"), also appeared and testified.

On September 4, 2008, the ALJ issued a decision finding Dodds not disabled, as defined in the Act. Dodds filed a request for review of the ALJ's decision. On January 24, 2009, the Appeals Council denied Dodds's request for review of the ALJ's decision, making it the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210. This appeal followed.

*Discussion*

The court reviews the Commissioner's decision to ensure the proper legal standards were applied and the findings were supported by substantial evidence in the record. 42 U.S.C. § 405(g). *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ resolved Dodds's claim at the fifth step of that

---

[1]In 2001, Dodds filed an application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Act. On June 27, 2003, an administrative law judge issued a decision finding Dodds not disabled, as defined by the Act. The ALJ in the present case did not reopen that final decision and, instead, summarized the medical evidence from that 2003 decision in reaching his decision on Dodds's 2004 DIB application.

Page 2 - FINDINGS AND RECOMMENDATION                                    [LB]

process, determining Dodds's retained the residual functional capacity ("RFC") to perform other work in the national economy.

A claimant's RFC is an assessment of the sustained work-related activities he can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ assessed Dodds's RFC as follows:

> [T]he claimant has the residual functional capacity to perform exertionally unlimited work as defined in 20 C.F.R. § 404.1567, except that such work should not be in an environment where a person would be required to have excellent visual acuity; he should never drive; he is limited to occasional public contact; and he should have only occasional contact with coworkers.

(Tr. 20-21.)[2]

Dodds asserts two challenges to the ALJ's decision to deny his benefits application. Dodds charges the ALJ omitted limitations in determining his RFC and, therefore, the ALJ's finding that Dodds could perform other work in the national economy (step five) is not supported by substantial evidence in the record. Secondly, he contends the ALJ relied on "erroneous vocational testimony" because it was in conflict with the *Dictionary of Occupational Titles* ("DOT") (U.S. Dept. Of Labor, 4th ed. Rev. 1991), and because the hypothetical to the VE was incomplete.

This court finds the ALJ applied proper legal standards and his RFC finding for Dodds is supported by substantial evidence in the record. Additionally, the court finds the VE testimony was not in conflict with the DOT and, in an event, there was persuasive evidence

---

[2] "Tr." refers to the official transcript of the administrative record. (Docket # 11.)

in the record to support the ALJ's reliance on the VE's testimony.  Finally, the ALJ's hypothetical

to the VE was adequate.  Accordingly, the decision of the ALJ should be affirmed.

I.    RFC Determination

Dodds charges the ALJ erred in determining his RFC because the ALJ failed to consider all

of his limitations.  As stated above, the ALJ who ruled on Dodds's 2004 application for DIB

assessed his RFC as follows:

> [T]he claimant has the residual functional capacity to perform
> exertionally unlimited work as defined in 20 C.F.R. § 404.1567,
> except that such work should not be in an environment where a
> person would be required to have excellent visual acuity; he should
> never drive; he is limited to occasional public contact; and he should
> have only occasional contact with coworkers.

(Tr. 20-21.)  By comparison, the original ALJ who ruled on Dodds's 2001 application for DIB and

supplemental security income ("SSI") determined Dodds had the following RFC:  "no physical

limitations, but moderate limitations in following detailed instructions or performing detailed tasks

and moderate limitations in cooperative efforts with co-workers."  (Tr. 368.)  Dodds contends the

ALJ here (2004 application for DIB) erroneously omitted the moderate restriction "in following

detailed instructions or in performing detailed tasks" as determined by the first ALJ.  According to

Dodds, that determination is "final as a matter of law" and should have been included by the ALJ

in the present RFC determination.  (Pl.'s Brief 17.)

In the Ninth Circuit, principles of res judicata apply to administrative decisions, although the

doctrine is applied less rigidly than to judicial proceedings.  *See Chavez v. Brown,* 844 F.2d 691, 693

(9th Cir. 1988).  Specifically, if the first ALJ finds no disability, a presumption of continuing non-

disability arises in the second proceeding.  *Id.* at 693; Acquiescence Ruling ("AR") 97-4(9), 1997

WL 742758, at *3 (S.S.A. Dec. 3, 1997). To overcome this presumption of non-disability, a claimant must prove changed circumstances indicating a greater disability. *Chavez,* 844 F.2d at 693 (reaching the age of 55, which has legal significance in determining disability, constituted a changed circumstance precluding the application of res judicata to the first administrative law judge's ultimate finding of no disability). Changed circumstances may include a change in the claimant's age category under 20 C.F.R. §§ 404.1563 or 416.963, an increase in severity of claimant's impairments, the existence of an impairment not previously considered, or a change in the criteria for determining disability. AR 97-4(9), 1997 WL 74275, at *3. *If* the presumption is rebutted, *then* the court must give effect to the previous ALJ's findings when adjudicating the subsequent claim. *Id.* A claimant's RFC, work experience and education cannot be reconsidered by a subsequent judge absent new information regarding those decisions not presented to the first ALJ. *Id.* (emphasis added); *see also Stubbs-Danielson v. Astrue,* 539 F.3d 1169 (9th Cir. 2008). Thus, the court will consider whether Dodds is able to overcome the presumption of non-disability and whether the original ALJ's RFC finding is entitled to preclusive effect.

A review of the record from the hearing on Dodds's 2001 application for DIB and SSI reveals two Psychiatric Review Technique forms ("PRTF"). (Tr. 199, 236.) The PRTF is a form completed by reviewing psychological consultants and used by ALJs to evaluate claims of mental impairment *See* 20 C.F.R. § 404.1615 and § 416.1015. Section III.A. of the PRTF is titled "Ratings of Functional Limitations, 'B' Criteria of the Listings." The "B Criteria" are four general categories of function: restrictions of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence or pace; and repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. § 404.1520a(c) and § 416.920a(c). The

Page 5 - FINDINGS AND RECOMMENDATION                                    [LB]

B Criteria are used to determine to what degree functional limitations exist as a result of a claimant's mental impairment  *Id.*

In order to satisfy the functional criterion, a claimant must have either a marked or extreme degree of limitation in one or more of the listings.  *Id.* at § 404.1520a(d) and § 416.920a(d)  For mental impairments, the degree of impairment in the four B Criteria are used to determine whether the mental impairment is "severe" at step two and whether the impairment "meets or equals" a listing at step three of the ALJ's analysis.  *Id.*  It is important to note, however, the B Criteria are not used to determine a claimant's RFC.  Rather, they are used to determine whether claimant has shown a severe enough impairment to require an RFC assessment.  *Id.* at § 404.1520a(d)(3) and § 416.920a(d)(3) ("If we find that you have a severe mental impariment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.").

To determine the RFC for a claim of mental impairment, a claimant's function is assessed based on 20 specific work-related abilities on the Mental Residual Functional Capacity ("MRFC") assessment. *See* § 404.1520a(e) and § 416.920a(e). The MRFC form sets forth four broad categories of function, used at steps two and three of the ALJ's analysis, broken down into 20 more specific work-related abilities.  Relevant here, the broad category for understanding and memory, and deficiencies of concentration, persistence or pace are broken into eleven specific abilities on the MRFC assessment.  (Tr. 214, 250.)  At the end of the MRFC assessment, the reviewing psychological consultant is required to elaborate on the findings on the worksheet.  Typically, the psychologist will set forth in greater detail what kinds of work tasks the claimant can and cannot accomplish.

As stated above, there were two PRTFs, with attached MRFCs, in the record before the original ALJ. The first PRTF in the record is dated October 4, 2001, and was completed by Dr. Dorothy Anderson, a reviewing psychologist. (Tr. 199.) Under the B Criteria, Dr. Anderson indicated Dodds had mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (Tr. 209.) Dr. Anderson determined an RFC assessment was necessary. (Tr. 199.) On the attached MRFC, Dr. Anderson indicated Dodds was not limited on ten of the eleven specific work-related abilities under category A "Understanding and Memory," and category B "Sustained Concentration and Persistence." (Tr. 214-15.) The single limitation for Dodds found by Dr. Anderson was a moderate limitation in his capacity to carry out detailed instructions. (Tr. 214-15.) At the end of the MRFC, Dr. Anderson clarified Dodds's limitations under category A "Understanding and Memory," and category B "Sustained Concentration and Persistence" by noting: "A) Can understand/remember instructions and procedures without limitations[;] B) Can sustain his attention for two hour periods to complete a work schedule[.]" (Tr. 216.)

The second PRTF in the original record is dated December 21, 2001, and was completed by Dr. Robert Henry, a reviewing psychologist. Under the B Criteria, Dr. Henry indicated Dodds had no restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (Tr. 246.) Dr. Henry determined an RFC assessment was necessary. (Tr. 236.) On the attached MRFC, Dr. Henry, like Dr. Anderson, indicated Dodds was not limited on ten of the eleven specific work-related abilities under category A "Understanding and Memory," and category B "Sustained Concentration and Persistence." (Tr. 250-51.) Once again, the single limitation for Dodds, found

by Dr. Henry, was a moderate limitation in his capacity to carry out detailed instructions. (Tr. 250-51.)  At the end of the MRFC, Dr. Henry clarified Dodds's limitations under category A "Understanding and Memory," and category B "Sustained Concentration and Persistence" in the same manner as Dr. Anderson:  "Can understand/remember instructions and procedures w/o limitations[;] Can sustain his attention for 2 hour periods to complete a work schedule[.]" (Tr. 252.)

Based on these two MRFC assessments, the original ALJ included in Dodds's RFC the moderate limitation for carrying out detailed instructions or performing detailed tasks but, nevertheless, concluded Dodds was not disabled as he was capable of performing his past relevant work as a telemarketer and a trawler fisherman.  (Tr. 368-69.)

Subsequent, to this non-disability determination on Dodds 2001 application, a third PRTF was completed on April 27, 2005, by reviewing psychologist Dr. Frank Lahman. (Tr. 565.)  Under the B Criteria, Dr. Lahman indicated Dodds had no restriction of activities of daily living, mild difficulties in social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (Tr.575.)  Dr. Lahman determined Dodds's impairments were not severe and an RFC assessment was not necessary. (Tr. 565.)  Further, attached to the PRTF is a "Mental Summary" dated January 9, 2006, and signed by Dr. Paul Rethinger, Ph.D.   The attachment indicates the additional findings set forth in the Mental Summary complete the medical portion of the disability determination.  The Mental Summary provides:

> [T]he [claimant] is alleging a head injury with related problems, on initial we sent him out for exams psych and physical and found non severe ratings.  On recon he is applying stating he didn't get his notice, he was in jail.  He has some mild visual problems which are easily corrected with lenses so this is 20/20 corrected.  He has some mild depression and is diagnosed with non severe adjustment disorder with depression.  On mental status testing he is functioning in the normal range in terms of attention, concentration, general fund of info, abstract thinking, mental math and

comprehension and problem solving.  The claimant's contentions are seen as non severe, please affirm initial ratings.

(Tr. 579.)

Despite these findings, the ALJ here determined, among other things, Dodds had moderate difficulties in maintaining concentration, persistence or pace under the B Criteria.  (Tr. 20.)  The ALJ, however, properly concluded the B Criteria were not satisfied.  Moreover, the ALJ expressly acknowledged the "limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment."  (Tr. 20.)  The ALJ also itemized the functions set forth in the four categories on the MRFC and expressly stated Dodds's RFC "assessment reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis."  (Tr. 20.)  In formulating Dodds's RFC, the ALJ properly based his RFC determination on Dodds's limitations that were supported by objective medical evidence; he was not required to rely on Dodds's subjective complaints, which were not credible.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (RFC determination proper where "ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" that lack credibility).

There is substantial evidence in the record to support the ALJ's determination that Dodds did not require moderate limitations in following detailed instructions or performing detailed tasks.  In fact, in addition to the reports of Drs. Lahman and Rethinger mentioned above, the record before the second ALJ contains abundant evidence of Dodds's normal or near normal mental functioning.  For example, in April 2005, David Northway, Ph.D, conducted a psychodiagnositc assessment of Dodds.  Dr. Northway reported:

In terms of mental status testing, Mr. Dodds appears to be functioning reasonably within the normal range in terms of attention, concentration, general fund of

information, abstract thinking, mental math and comprehension and problem solving. He did display deficits on the un-normed verbal memory task. Strength on visual memory versus verbal memory is consistent with his performance on a neuropsychological screening assessment done in this office in September of 2001. More formal testing would be required at this time to accurately assess current levels of functioning. Based on these informal measures, it appears he would be capable of learning, understanding and remembering new information, although might struggle more with verbal material. Processing speed, abstract thinking, comprehension, judgment and problem solving skills were all intact and should not be an impediment to functioning in both social and vocational settings.

(Tr. 558.)

In October 2007, Dr. Alan Cohn, a treating psychiatrist, reported Dodds was "exercising, writing and studying algebra. He's working on a three book saga about a woman detective fighting a cult. He works out doing cardio and strength." (Tr. 671.) Dr. Cohn also assessed Dodds as cognitively intact, logical and coherent. (Tr. 671.). Similarly, the following month, Dr. Cohn reported Dodds was working on his books and working out; he was "pleasant, alert, communicative, good memory for recent and remote events." (Tr. 670.)

Dodds fails to cite to any objective medical evidence in the record in support of his claim for a RFC with a moderate limitation in following detailed instructions or performing detailed tasks. Nor does Dodds argue he submitted new evidence to demonstrate a degeneration of his impairments overall and reflected changes in his condition since the time the first ALJ found him not disabled, i.e., rebut the presumption of continuing non-disability. Rather, he simply maintains that because the original ALJ found moderate limitations in following detailed instructions or performing detailed tasks, the ALJ in this case must adopt that limitation in the present application for benefits. Dodds does not cite any legal authority for this conclusion. Further, during the hearing before the ALJ, Dodds testified in response to questioning from his attorney regarding his functional limitations:

[LB]

Q:    Can we go through some of the areas where you know that you're having difficulty. Do you have trouble comprehending things, understanding things?

A.    Sometimes.

Q:    Do you have any examples of items that you know I should be able to do that but I can't ?

A:    Not really, I mean, I couldn't give you an example.

. . . .

Q:    Okay. Do you have any trouble with doing tasks. Like if you were to do something at home, like you're trying to accomplish some task, whatever it may be, do you start it and finish it or do you have trouble doing that?

A:    I do everything now incrementally, I work out incrementally, I clean house incrementally. If I got, you know, like work or something I need to write I do it incrementally, I don't try to push myself too hard anymore because I realize that I, you know, I'm permanently damaged and I just have to live with it and face it and stop, you know, try and deny and act like I'm okay when I'm not.

(Tr. 341-43.)

The court declines to grant preclusive effect to the original ALJ's determination that Dodds's RFC included moderate limitations in following detailed instructions or performing detailed tasks. The presumption of continuing non-disability applies when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim. *Chavez,* 844 F.2d at 693-94. Dodds was unable to overcome the presumption of non-disability as required by the Ninth Circuit in *Chavez,* and construed by the Commissioner in AR 97-4(9), 1997 WL 74275. Dodds has presented no new evidence of an increase in the severity of his impairments or the existence of an impairment not previously considered. Nor has there been a change in the criteria for determining disability or a relevant change in Dodds's age category. Simply put, there is no evidence, new or old, that Dodds suffers from a medically determinable impairment. In fact,

Page 11 - FINDINGS AND RECOMMENDATION                                          [LB]

to the extent there is "new evidence" in the record, i.e., Drs. Lahman's, Rethinger's, Northway's and Cohn's reports, that evidence establishes Dodds does not require a moderate limitation in following detailed instructions or performing detailed tasks.

Finally, even if the ALJ should have included such a restriction, the error was harmless. As set forth in Section II.B., below, the identified jobs of Checker I (DOT § 222.687-010) and Agricultural Produce Packer (DOT § 920.687-134), are both unskilled jobs that can be performed by individuals limited to simple tasks and do not require Dodds to follow detailed instructions or perform detailed tasks. The court concludes the ALJ applied proper legal standards and there is substantial evidence in the record to support the ALJ's determination of Dodds's RFC.

II.    Vocational Expert Testimony

At step five of the sequential decision-making process, the Commissioner must establish there are a significant number of jobs in the national economy claimant can do despite the limitations in his RFC assessment. *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question setting forth all of claimant's limitations and restrictions. 20 C.F.R. §§ 404.1566, 416.966; *Tackett,* 180 F.3d at 1098-99; *Andrews,* 53 F.3d at 1043.

At step five, the ALJ concluded Dodds was not disabled because he retained the RFC to perform jobs which exist in significant numbers in the national and local economy. Specifically, the ALJ stated:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as order checker (Dictionary of Occupational Titles (DOT) code 222.687-010, light exertion,

unskilled, SVP 2), 148,000 jobs in the economy of the United States, and 1,800 jobs in the economy of the state of Oregon; and packager (DOT code 920.687-134, light exertion, unskilled SVP 2), 178,000 jobs in the economy of the United States, and 2,100 jobs in the economy of the state of Oregon.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 30.)

Dodds challenges the vocational evidence on two grounds. First, Dodds maintains the VE testimony regarding his ability to perform jobs in the national economy contradicted information provided in the DOT. Next, Dodds contends the ALJ failed to include the limitation of moderate difficulties with concentration, persistence and pace in the hypothetical question posed to the VE. The court will consider both of these challenges to the VE testimony.

A. VE Testimony in Conflict with the DOT

Dodds first challenges the VE's conclusion that a hypothetical person could perform work as an order checker despite the ALJ's restriction that the person "not be[] in an environment where . . . [he] would be required to have excellent visual acuity." (Tr. 347.) Dodds explains the DOT description for checker I requires "near acuity" on a "frequent" basis, *see* DOT § 222.687-010, 1991 WL 672130 (G.P.O. 1991), yet the VE testified the order checker allowed for individuals with "low vision." (Tr. 350.) Dodds also contends there is no difference in the requirements of jobs expressly excluded by the VE because of the vision related restrictions, and the jobs she identified as adequate. According to Dodds, the VE excluded troller fisherman (no near acuity required), amusement park worker (occasional near acuity required), security guard (frequent near acuity required) and fast food worker (frequent near acuity required) because of a low vision limitation even though these jobs required the same or less "near acuity" requirements as the order checker. *See* DOT § 441.684-010,

1991 WL 673471 (G.P.O. 1991); DOT § 349.664-010, 1991 WL 672881 (G.P.O. 1991); DOT § 372.667-038, 1991 WL 673101 (G.P.O. 1991); DOT § 311.472-010, 1991 WL 672682 (G.P.O. 1991).

According to Dodds, the ALJ's reliance on the VE's testimony was contrary to the Ninth Circuit's decision in *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995), and constitutes reversible error. In *Johnson*, the Ninth Circuit held an ALJ may base his conclusions on a VE's testimony that conflicts with the DOT, "but only insofar as the record contains persuasive evidence to support the deviation." *Id.* In that case the court found the ALJ properly relied upon VE testimony that was in conflict with the DOT because the VE provided "persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.*

Although evidence provided by a VE generally should be consistent with the DOT, neither source automatically prevails when a conflict arises. *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007); *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). Rather, the ALJ must first determine whether a conflict exists. *Massachi,* 486 F.3d at 1153. If a conflict exists, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*" *Id.; see also Johnson,* 60 F.3d. at 1435.

The Commissioner responds the VE testified individuals with low vision can work and to "rule-out" all jobs based on visual acuity would require a hypothetical based on the results of visual testing. (Def.'s Brief 15.) According to the Commissioner, no such test results exist and, therefore,

were not included in the hypothetical. *Bayliss*, 427 F.3d at 1217. Rather, the hypothetical to the VE included a limitation that Dodds not be in an environment where he would be required to have excellent visual acuity. (Tr. 347.) The Commissioner points out that despite being examined by numerous ophthalmologists, including Dr. Robert A. Egan of the Casey Eye Institute, the only significant finding being Dodds's vision was corrected to 20/25. (Tr. 285.) For example, Dr. Egan examined Dodds in February 2003, and provided a neuro-ophthalmic consultation. Dr. Egan reported essentially normal findings and stated Dodds's "subjective complaints far outweigh [the] objective findings." (Tr. 285.) Further, Dr. Egan administered the Goldmann perimetry test and it revealed "no abnormalities in either eye." Dr. Egan concluded Dodds had "[n]ormal visual fields." (Tr. 287.) Similarly, the record reveals Dodds's other ophthalmic examinations were normal. (Tr. 304-17.) In fact, the ALJ's limitation of a work environment that did not require excellent visual acuity was based on the recommendation of Peter Verhey, M.D. Dr. Verhey is not an ophthalmologist and he neither examined Dodds eyes nor administered any eye tests. (Tr. 546-50.)

Dodds has not presented evidence or even argument that the VE's testimony here is in actual conflict with the DOT. With respect to Dodds's claim that someone with "low vision" is unable to perform the job of checker I because of the frequent near acuity requirement, the term low vision was coined by the VE and not a limitation set forth in the Dodds's RFC. The evidence in the record supports a finding by the ALJ that Dodds can perform the position of checker I, work requiring something less than excellent vision, which requires only near acuity frequently and no far acuity. *See* DOT § 222.687-010, 1991 WL 672130. Moreover, SSR 00-4p recognizes:

> The DOT lists maximum requirements of occupations as generally performed, not the range or requirements of a particular job as it is performed in specific settings.

> A VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, 2000 WL 1898704, at *3.

With respect to Dodds's claim the VE excluded jobs requiring the same or lower visual acuity, it is clear from the record those jobs were excluded for a number of reasons. The VE testified visual acuity "not only affects the environment but the job application." (Tr. 347.) In fact, the ALJ elicited an explanation why Dodds's past relevant work and certain other jobs should be eliminated. For example, the VE explained "[c]ertainly the troller fishing would be at risk, carnival work, security guard could not pass the physical. Fast food, the work environment there with the multi-tasking and different areas would be affected." (Tr. 347-48.) It is clear from her testimony, the VE did not eliminate jobs based solely on visual acuity but, rather, for reasons of safety, ability to multitask, and the likelihood of being able to pass a physical examination. (Tr. 347-48.) Moreover, the VE also elaborated on the requirements of near acuity and explained near acuity was "some clarity at 20 inches." (Tr. 347.) She further defined "clarity" as an ability to read and distinguish numbers. (Tr. 348.) It is clear from the record Dodds satisfies the requirements for near acuity as he is able both to read and to distinguish numbers.

The court finds there is substantial evidence in the record to support the ALJ's finding that Dodds was able to perform the work of checker I. As set forth above, Dodds has not established an actual conflict between the VE's testimony and the DOT. Instead, the VE's opinion was more complete than the DOT with respect to an individual capable of performing work that did not require excellent vision. "DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community." DOT *Special Notice,* 1991 WL 645963

Page 16 - FINDINGS AND RECOMMENDATION                                    [LB]

(G.P.O. 1991); *see also Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (VEs "discuss more specific jobs than the general category of job found in the DOT"); *see also Barker v. Secretary of Health and Human Svcs.*, 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (VE could testify as to jobs described as light work even though same category of job was listed in DOT as requiring medium work). The ALJ properly relied on the VE's testimony that provided more precise details about the job identified and there is persuasive evidence in the record to support any alleged deviation. *See Johnson*, 60 F.3d at 1435-36. Finally, any error by the ALJ in this instance was harmless as Dodds was able to perform the position of agricultural produce packager, which requires only occasional near acuity and no far acuity. *See* DOT § 920.687-134, 1991 WL 687994 (G.P.O. 1991).

     B.       Hypothetical to the VE

     Dodds next challenges the VE's testimony regarding the core requirements for the position of packager.[3] *See* DOT § 920.687-134, 1991 WL 687994. According to Dodds, the VE "misidentified" this work as light, i.e., lifting up to 20 pounds, when actually it is at a medium, i.e., lifting up to 50 pounds. Dodds also argues the VE erroneously described the packager occupation as "so simple that it's like one - - two to three steps, four at the most." (Tr. 351.) According to Dodds, the VE relied on the fewer number of tasks to find the position of packager was appropriate for someone with low vision. Dodds points to the DOT description for the an agricultural produce packer, which could include nearly 20 sequential tasks. *See* DOT § 920.687-134, 1991 WL 687994. Finally, the ALJ determined "with regard concentration, persistence or pace, [Dodds] has moderate

---

     [3]Dodds also points to the VE's statements regarding the classification for an athletic equipment or supply room custodian as providing further evidence of the "inherent unreliability" of the VE's testimony. (Pl.'s Brief 12.) The court need not address this issue as VE ruled out the position of athletic equipment or supply room custodian.

difficulties" (Tr. 20.) Dodds contends the fact of his concentration, persistence and pace restriction

previously had been established in the June 27, 2003, decision denying his 2001 application for DIB

and supplemental security income ("SSI"). Dodds argues the ALJ failed to include this limitation

in his hypothetical to the VE and his failure to do so was reversible error. *See, e.g., Embrey v.*

*Bowen,* 849 F.2d 418, 422 (9th Cir. 1988). The court will consider the three challenges – the lifting

requirements, the number of tasks and the limitation for concentration – as set forth below.

First, the ALJ determined Dodds was able to perform "exertionally unlimited work" as

defined by the regulations and Dodds does not challenge this finding. Thus, a misstatement by the

VE that the agricultural packer position was light, rather than medium, work is not relevant under

the circumstances and could not form the basis for an assignment of error by the ALJ. Next, despite

Dodds's efforts to cast the agriculture packer job as too complex for someone with low vision, that

job is unskilled and classified at "Reasoning : Level 2 - Apply commonsense understanding to carry

out detailed *but uninvolved* written or oral instructions. Deal with problems involving *a few concrete*

*variables in or from standardized situations.*" *See* DOT § 920.687-134, 1991 WL 687994 (emphasis

added).[4]  Further, it requires only occasional near acuity and no far acuity.  *Id.*

Lastly, as set forth above, a finding of moderate difficulties with concentration persistence

or pace is not part of a claimant's RFC but, rather relevant to the B Criteria and a finding of severe

impairment at steps two and three.  Moreover, the court already concluded in Section I., above, the

ALJ properly determined Dodds's RFC.  The ALJ's hypothetical to the VE included Dodds's age,

education, work experience and the limitations set forth in his RFC. (Tr. 347-52.) *See Embrey,* 849

---

[4]Each occupation in the DOT is coded with a reasoning development level, which
corresponds to the ability to follow instructions and solve problems that is required for
satisfactory job performance. *See,* DOT, app. C, 1991 WL 688702 (G.P.O. 1991).

F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. . . .") The VE, in turn, identified representative jobs such as checker I and agricultural produce packager in the national and local economy and testified her answers would be consistent with the DOT. Thus, there is substantial evidence in the record to support the ALJ's finding that Dodds was capable of performing the unskilled work of an agricultural packager.

Alternatively, even assuming Dodds required moderate limitations for following detailed instructions or performing detailed tasks, the error is harmless because there is no conflict between the ALJ's step five determination that Dodds could complete perform jobs that the U.S. Department of Labor categorizes at "Reasoning Level 2" and a requirement that Dodds complete only simple tasks. *See*, DOT, app. C, 1991 WL 688702. Indeed, the Level 2 reasoning definition refers to "detailed but *uninvolved*" instructions. *Id.* (emphasis added). The dictionary defines "uninvolved" as "not involved," and in turn defines "involved" as "complicated, intricate." *Webster's Third New Int'l Dictionary* 1191, 2499 (2002). Level 2 reasoning is consistent with an ability to perform only simple, routine tasks. Because the DOT ranks reasoning on a six-point scale, level two reasoning describes someone with who can do more than the "most elementary of occupations" that require "only the slightest bit of rote reasoning." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). Thus, someone who is able to perform even simple instructions meets level two reasoning. *Id.; Riggs v. Astrue,* No. 07-5242RJB-KLS, 2008 WL 1927337, at *15 (W.D. Wash. Mar. 31, 2008) (level two reasoning is consistent with the claimant's limitation "to understanding, remembering and carrying out simple instructions"). Thus, there is no direct conflict between carrying out simple job instructions for simple, routine and repetitive work activity and the VE's identification of an

agricultural produce packager involving instructions that, while potentially detailed, are not complicated or intricate. *See Burch v. Barnhardt*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

## Recommendation

Based on the foregoing, the ALJ's decision that Dodds was not disabled and is not entitled to DIB under Title II of the Act was based on correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **January 12, 2011**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 28th day of December 2010

John V. Acosta
United States Magistrate Judge